UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
ANDREW GILBERT,

                                **COMPLAINT**

                **Plaintiff,**

                                Index No.

    **-against-**

THE CITY OF NEW YORK; NEW YORK CITY POLICE
DEPARTMENT ("NYPD") OFFICER JOSEPH R. VINCENT,
SHIELD NUMBER 23708; AND NYPD OFFICER GRACE
ROSERO-TAPIA, SHIELD NUMBER 21698;

               **Defendants.**
-------------------------------------------------------------------------------X

      Plaintiff, ANDREW GILBERT, by his attorneys, Gideon Orion Oliver and Cohen & Green PLLC, hereby complains of the Defendants as follows:

## JURISDICTION AND VENUE

      1.    Plaintiff brings this action pursuant to 42 U.S.C. § 1983, the First, Fourth, and Fourteenth Amendments to the United States Constitution, and New York law.

      2.    This Court has jurisdiction over the claims herein pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

      3.    Venue is proper pursuant to 28 U.S.C. § 1391, *et seq.,* in the Southern District of New York, where Defendant City of New York has offices and the majority of the actions complained of herein occurred.

## PARTIES

      4.    At all times mentioned herein, Plaintiff ANDREW GILBERT (Mr. Gilbert; he/him) was a resident of Queens County in the City and State of New York.

      5.    At all relevant times mentioned herein, Defendant CITY OF NEW YORK (the "City") was and is a municipal corporation duly organized and existing under and by virtue of

the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

6.  At all times hereinafter mentioned, Defendant City employed Defendants NYPD Officer Joseph R. Vincent, Shield No. 23708, and NYPD Officer Grace Rosero-Tapia, Shield No. 21698, each of whom violated Plaintiff's rights, as set forth more fully below.

7.  Each Individual Defendant is sued in their individual capacity.

8.  At all times hereinafter mentioned, the Individual Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

9.  Each and all of the acts and omissions of the Individual Defendants alleged herein occurred while said Individual Defendants were acting within the scope of their employment by the Defendant City.

10. At all relevant times, the Individual Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant City who were acting for, and on behalf of, and with the power and authority vested in them by Defendant City, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

11. The Individual Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned,

acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

12. At all times relevant herein, as set forth more fully below, the Individual Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

13. Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no time did any of the Individual Defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the unconstitutional conduct engaged in by their fellow officers.

## GENERAL MUNICIPAL LAW COMPLIANCE

14. Plaintiff timely served a Notice of Claim on Defendant City of New York on January 17, 2022, and complied with all conditions precedent to commencing an action under New York law.

15. Mr. Gilbert provided detailed testimony about the incident at a hearing pursuant to New York General Municipal Law Section 50-h on April 19, 2022.

16. At least thirty days have elapsed since January 17, 2022 and adjustment and payment thereof has been neglected or refused.

17. This action has been initiated within one year and ninety days of the accrual of Plaintiff's claims under New York law.

## STATEMENT OF FACTS

18. On October 19, 2021, a City-wide COVID-19 mask mandate was in effect, which required people, including members of the NYPD, to wear face coverings on New York City subways.

19. That morning, Plaintiff Andrew Gilbert was on his way to work and got off the train at his usual stop on the downtown side of the 8th Street – NYU N/R/W subway platform.

20. Around between 8:00 and 9:00 AM on October 19, 2021, Mr. Gilbert saw two NYPD members -- Defendants Officer Joseph R. Vincent, Shield No. 23708 and Officer Grace Rosero-Tapia, Shield No. 21698 -- standing with their backs up against the wall of the station on the downtown side of the 8th Street – NYU N/R/W subway platform.

21. Defendants Vincent and Rosero-Tapia were wearing blue NYPD uniforms.

22. Defendants Vincent and Rosero-Tapia were not wearing masks, or any other type of face covering.

23. Mr. Gilbert approached Defendants Vincent and Rosero-Tapia and verbally engaged them about their failure to wear masks on the subway platform.

24. Mr. Gilbert recorded his interactions with his cell phone.

25. After a verbal interaction that lasted for between 1 and 2 minutes total, Defendant Vincent then assaulted, battered, and seized Mr. Gilbert, with Defendant Rosero-Tapia's assistance, ultimately pushing Mr. Gilbert out of the subway exit at 8th Street and Broadway.

26. In response to a number of comments and questions from Mr. Gilbert about the Defendants' failure to wear masks and requests for them to do so in accordance with the law, Defendant Vincent responded by alternating between sarcastically pretending he could not hear Mr. Gilbert through Mr. Gilbert's mask and ignoring him.

27. Mr. Gilbert repeatedly asked Defendants Vincent and Rosero-Tapia to put masks on in compliance with the mask mandate.

28. Another person joined Mr. Gilbert in telling Defendants Vincent and Rosero-Tapia to put their masks on.

29. After approximately 1-2 minutes of back and forth, Defendant Vincent physically seized Mr. Gilbert by grabbing his clothes.

30. Over the course of the next around 10-30 seconds, Defendant Vincent then forced Mr. Gilbert to the exit of the station at 8th Street and Broadway, holding onto the front of Mr. Gilbert's clothes, telling him he was "being disruptive."

31. As Defendant Vincent did so, Mr. Gilbert told Defendant Vincent in substance to stop touching him and to let go.

32. Defendant Rosero-Tapia not only failed to intervene as Defendant Vincent retaliated against, seized, assaulted, and battered, Mr. Gilbert – she assisted Defendant Vincent.

33. For example, Defendant Rosero-Tapia walked along with Defendant Vincent, in approval and support of what he was doing to Mr. Gilbert.

34. Defendant Rosero-Tapia also held the emergency exit door open for Defendant Vincent so that he could eject Mr. Gilbert from the subway station.

35. Defendant Vincent pushed Mr. Gilbert out of the station platform and onto the opposite side of the emergency exit door.

36. Defendant Vincent then closed the emergency exit door, so that Mr. Gilbert could not re-enter the subway platform.

37. Mr. Gilbert asked Defendants Vincent and Rosero-Tapia for their names and badge numbers.

38. However, Defendants Vincent and Rosero-Tapia did not provide their names and badge numbers or any other identifying information.

39. Instead, they ignored Mr. Gilbert and walked away from him.

40. A bystander named Victoria Hall recorded part of the interaction between Defendants Vincent and Rosero-Tapia and Mr. Gilbert - beginning at around the time Defendant Vincent seized Mr. Gilbert and pushed him backwards – on her phone.

41. On October 19, 2021, at around 8:59 a.m., Ms. Hall posted a 35-second video of the interaction between Mr. Gilbert and Defendants Vincent and Rosero-Tapia (the "Hall Video") on her personal Twitter account (@ToriaHall), along with the statement: "#NYC #NYPD harassing this subway rider for having the nerve to ask them to put on masks! #notabovethelaw @NYCMayor." *See* https://twitter.com/toriahall/status/1450446399758290944 (Last accessed January 14, 2023). Plaintiff incorporates the Twitter post and video by reference.

42. The Twitter post and Hall Video immediately went viral.

43. As of January 14, 2023, the Twitter interface indicates that the Hall Video has been viewed at least 3.3 million times, and that the tweet has been retweeted 3,186 times, quote tweeted 1,611 times, and liked 13,000 times.

44. Almost immediately after the incident took place, the City reportedly began to conduct an investigation or investigations into the officers' conduct.

45. On October 20, 2021, then-NYPD Commissioner Dermot Shea described the incident as "'[a]bsolutely inexcusable.'" *See* Troy Closson, "A Subway Rider Confronted Unmasked Police Officers. They Kicked Him Out", *The New York Times*, October 20, 2021, available online at https://www.nytimes.com/2021/10/20/nyregion/nypd-unmasked-covid.html (last accessed January 17, 2023).

46.     Also on October 20, 2021, the NYPD publicly said that the incident "was under internal review." *Id.*

47.     Also on October 20, 2021, then-NYPD Commissioner Shea "asked that the patrol officers involved be disciplined, while adding that he would not expect them to be fired, suspended or placed on modified duty." *Id.*

48.     Also on October 20, 2021, then-Mayor Bill de Blasio publicly said he was "'troubled' by the video" and made other comments based on his own observations the video. *Id.*

49.     Also on October 20, 2021, then-NYPD Commissioner Shea said: "Nobody's getting fired over this incident, nobody's getting suspended over this incident, but at the same time, I'm not in any way shape or form attempting to downplay that." *See* Stephen Nessen, "Unmasked Cops, Who Shoved Customer Out of Subway For Asking Why They Were Unmasked, Face Discipline", *Gothamist*, October 20, 2021. Available online at https://gothamist.com/news/unmasked-cops-who-shoved-customer-out-subway-asking-why-they-were-unmasked-face-discipline (last accessed January 17, 2023).

50.     Between October 19, 2021 and December 2022, the City's Civilian Complaint Review Board ("CCRB") investigated the incident.

51.     Mr. Gilbert cooperated with and participated in the CCRB's investigation.

52.     In a December 19, 2022 letter, the CCRB informed Mr. Gilbert it had substantiated allegations against both Defendants Vincent and Rosero-Tapia regarding the incident.

53.     Specifically, the CCRB substantiated the following allegations and made the following Board Findings:

   a. Force: Police Officer Joseph Vincent use physical force against Andrew Gilbert – Substantiated (Command Discipline B);

   b. Abuse of Authority: Police Officer Joseph Vincent refused to provide his shield number to Andrew Gilbert – Substantiated (Command Discipline A);

   c. Abuse of Authority: Police Officer Grace Roserotapia [sic] refused to provide her shield number to Andrew Gilbert - Substantiated (Command Discipline A);

   d. Untruthful Statement: Police Officer Joseph Vincent provided a false official statement to the CCRB on February 17, 2022 – Substantiated (Charges); and

   e. Untruthful Statement: Police Officer Grace Roserotapia [sic] provided a false official statement to the CCRB on February 17, 2022 – Substantiated (Charges).

54. The CCRB recommended that the NYPD bring formal charges against Defendants Vincent and Roserio-Tapia.

55. Upon information and belief, the City has not taken any formal disciplinary action against Defendants Vincent and Roserio-Tapia.

56. Upon informaiton

### FIRST CLAIM FOR RELIEF

**Against the Individual Defendants For Violations of Plaintiff's First Amendment Rights, Including Under First Amendment – Retaliation and Time/Place/Manner Theories of Liability**

*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the First and Fourteenth Amendments to the United States Constitution*

57. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

8

58. Mr. Gilbert had clearly established First Amendment rights to observe, speak with, and record Defendants Vincent and Rosero-Tapia.

59. Defendants Vincent and Rosero-Tapia.retaliated against Plaintiff for engaging in speech and/or conduct protected by the First Amendment.

60. Defendants Vincent and Rosero-Tapia.engaged in the acts and omissions complained of herein in order to prevent Plaintiff from continuing to engage in such protected speech and/or conduct.

61. Defendants Vincent and Rosero-Tapia.engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiff from engaging in similar protected conduct in the future.

62. Upon information and belief, Defendants Vincent and Rosero-Tapia.engaged in the acts and omissions complained of herein with respect to Plaintiff's First Amendment-based claims  malice.

63. Defendants Vincent and Rosero-Tapia.imposed restrictions on Plaintiff's protected speech and/or conduct that violated Plaintiffs' First Amendment rights, including, but not limited to, in unreasonably limiting Plaintiff's witnessing and recording their police actions in public, in retaliating against Plaintiff for engaging in that protected conduct, in subjecting Plaintiff to excessive force, and in otherwise violating Plaintiff's rights and engaging in the acts and omissions complained of herein.

64. In addition to being retaliatory, the restrictions Plaintiff complained of herein that Defendants Vincent and Rosero-Tapia imposed on Plaintiffs' First Amendment rights to engage in protected speech and conduct, were themselves regulations on Plaintiff's protected conduct that:

    a.    Were viewpoint discriminatory and/or otherwise not content-neutral, and were not necessary, and precisely tailored, to serve compelling governmental interests, and/or were not the least restrictive means readily available to serve those interests; or, alternately,

    b.    Were content-neutral, but lacked narrow tailoring to serve a significant governmental interest, in that they burdened substantially more protected speech and/or conduct than necessary to serve those interests, and/or failed to provide ample alternatives for Plaintiff's protected expression, including in that Plaintiff's abilities to communicate effectively were threatened; and/or

    c.    Amounted to the imposition of strict liability on Plaintiff for engaging in protected speech and/or expression.

65. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

66. Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SECOND CLAIM FOR RELIEF

### Excessive Force

### Against the Individual Defendants

*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution*

67. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

68. The Individual Defendants' use of force against Plaintiff was unjustified and objectively unreasonable, taking into consideration the facts and circumstances that confronted them.

69. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

70. Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### THIRD CLAIM FOR RELIEF

### Unlawful Seizure / False Arrest

### Against the Individual Defendants

*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiffs' Rights Under the Fourth and Fourteenth Amendments to the United States Constitution*

71. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

72. The Individual Defendants seized Mr. Gilbert without a judicial warrant authorizing them to seize Plaintiff.

73. The Individual Defendants seized Mr. Gilbert without privilege or lawful justification.

74. The Individual Defendants' seizure of Mr. Gilbert was unreasonable.

75. Plaintiff did not consent to and was conscious of his confinement by the Individual Defendants.

76. The Individual Defendants did not have probable cause to seize, detain, or arrest Plaintiff.

77. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering,

psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

78. Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## FOURTH CLAIM FOR RELIEF

### Municipal Liability

### Against Defendant City of New York

*Pursuant to 42 U.S.C. 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978) for Defendants' Violations of Plaintiff's Rights Under the First, Fourth, and Fourteenth Amendments to the United States Constitution*

79. Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

80. All of the wrongful acts or omissions complained of herein were the result of Defendant City's deliberate indifference to Plaintiff's rights secured by the First, Fourth, and Fourteenth Amendments of the United States Constitution, as evidenced by the City's failures, and the failures of the City's policymaking agents, to train, supervise, and discipline NYPD officers, including the Individual Defendants, despite full knowledge of their wrongful acts, as described herein and otherwise.

81. In this case, in addition to failing to train the Individual Defendants related to Mr. Gilbert's rights to witness and record public police activity, Defendant City has failed to supervise or discipline or take other remedial action with respect to the Individual Defendants, effectively ratifying the Individual Defendants' misconduct: High-level officials, including the City's Mayor and NYPD Commissioner at the time of the incident, knew about the Individual

Defendants' retaliation against Mr. Gilbert, and, a year and a half later, they have failed to take any meaningful action in response.

82. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

83. Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## FIFTH CLAIM FOR RELIEF

**Violations of New York State Law**

**Against All Defendants**

*Pursuant to New York State Law and the New York State Constitution*

84. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

*Respondeat Superior* **Liability**

85. The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City, clothed with and/or invoking state power and/or authority, and, as a result, Defendant City is liable to the Plaintiff pursuant to the state common law doctrine of *respondeat superior*.

**Assault**

86. The Individual Defendants committed assault within the meaning of New York common law against Plaintiff by intentionally placing Plaintiff in fear of imminent harmful or offensive contact without justification.

**Battery**

87. The Individual Defendants committed battery within the meaning of New York common law against Plaintiff by intentionally physically contacting Plaintiffs without Plaintiff's consent and without justification.

**New York City Administrative Code Title 8, Chapter 8**

88. In seizing, assaulting, and battering Plaintiff, the Individual Defendants violated New York City Administrative Code Title 8, Chapter 8 ("The Right of Security Against Unreasonable Search and Seizure and Against Excessive Force Regardless of Whether Such Force Is Used in Connection with a Search or Seizure").

**New York Civil Rights Law § 79-P**

89. Prior to his the Individual Defendants' retaliation against, and seizure, assault, and battery of, Mr. Gilbert, Mr. Gilbert had been exercising his rights under New York Civil Rights Law § 79-P, the New Yorker's Right to Monitor Act, to record law enforcement activity.

90. The Individual Defendants interfered with Mr. Gilert's recording and retaliated against him for recording.

**False Imprisonment and Unreasonable Detention**

91. By the actions described above, the police officials described above did falsely arrest and/or imprison Plaintiff within the meaning of New York common law without reasonable or probable cause, illegally and without a written warrant, and without any right or

authority to do so. Plaintiff was conscious of the confinement and it was without Plaintiff's consent.

### Negligent Training and Supervision

92. Defendant City negligently trained supervised, and trained Defendants Kasaji and Does 1-4.

### Violations of the New York State Constitution

93. Defendants, acting under color of law, violated Plaintiff's rights pursuant to Article I, §§ 6, 8, 9, 11, and/or 12 of the New York State Constitution.

94. A damages remedy here is necessary to effectuate the purposes of Article I, §§ 6, 8, 9, 11, and/or 12 of the New York State Constitution, and appropriate to ensure full realizations of Plaintiff's rights under those sections.

95. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

96. Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

i. Actual and punitive damages against the individual Defendants in an amount to be determined at trial;

ii. Actual damages in an amount to be determined at trial against the City of New York;

iii. Statutory attorney's fees, disbursements, and costs of the action pursuant to, *inter alia,* 42 U.S.C. §1988, New York Civil Rights Law § 79-P(3)(d), New York City Administrative Code § 8-805(a)(2), and New York common law; and

iv. Such other relief as the Court deems just and proper.

Dated: Brooklyn, New York
       January 17, 2023

**GIDEON ORION OLIVER**

277 Broadway, Suite 1501
New York, NY  10007
t: 718-783-3682 x 5
f: 646-349-2914
Gideon@GideonLaw.com

**COHEN&GREEN P.L.L.C.**

By:
Elena L. Cohen
J. Remy Green
Jessica Massimi

1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
t: (929) 888-9480
f: (929) 888-9457
e: elena@femmelaw.com
   remy@femmelaw.com
   jessica@femmelaw.com

16